UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

KULVINDER SINGH,

      Petitioner,

v.

WARDEN OF THE BLUBONNET
DETENTION FACILITY, et al.,

      Respondents.

No. 1:26-CV-304-H

## ORDER

The Fifth Circuit held recently that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Kulvinder Singh, a native and citizen of India, is one such alien, having illegally entered the United States less than three years ago. His habeas petition, filed before the Fifth Circuit's decision in *Buenrostro-Mendez*, demands either his release or a bond hearing based on the text of the INA and the Fifth Amendment's Due Process Clause. Dkt. No. 1.

In light of *Buenrostro-Mendez*, Singh's due process claim is the only remaining non-foreclosed issue. But neither the substantive nor procedural veins of due process afford alien petitioners a bond hearing. Due process is a contextual concept, and in the context of alien removal, it is a limited one. Congress determined that aliens like Singh are not entitled to bond, but they are permitted to remain in U.S. custody and fight to remain here. That is more than sufficient process so far as the Due Process Clause is concerned.

Because the legal arguments and facts presented in the petition are either meritless or otherwise indistinguishable from those addressed in the Court's prior decisions denying relief, "it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus. 28 U.S.C. § 2243. Thus, while the Court would ordinarily issue an order to show cause, it exercises its discretion to forgo that step here. *Id.*; *see Wottlin v. Fleming*, 136 F.3d 1032, 1034 (5th Cir. 1998). The petition (Dkt. No. 1) is denied.

## 1. Background

Singh was detained while illegally crossing into the United States at or near Lukeville, Arizona in October 2023. Dkt. No. 1 ¶ 11. Amidst a wave of illegal entries across the U.S.-Mexico border and a resulting lack of space to hold detainees, ICE released Singh into the United States on recognizance. *Id.* ¶ 12. Several weeks ago, ICE re-detained Singh and placed him into custody at the Bluebonnet Detention Facility in Anson, Texas, where he remains in custody. *Id.* ¶ 6.

It is not clear whether Singh has requested a bond hearing before an immigration judge. *See id.* ¶ 20. Doing so, however, would be futile in light of the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, which held that aliens present in the United States without admission must be detained without bond under Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings. 29 I. & N. Dec. 216, 220 (BIA 2025).[1]

_____

[1] On February 18, 2026, the Central District of California purported to vacate *Yajure Hurtado*. *Maldonado Bautista v. Santacruz*, 820 F. Supp. 3d 1016 (C.D. Cal. 2026). But as the Court explained in *Calderon Lopez v. Lyons*, the Central District lacks authority to enter such relief. 813 F. Supp. 3d 692, 705–10 (N.D. Tex. 2025). After hearing oral argument on the issue, the Ninth Circuit issued a stay pending appeal of the Central District's class-certification order, final judgment, and post-judgment vacatur of *Yajure Hurtado* on March 31, 2026. *See Maldonado Bautista v. EOIR*, Nos. 25-7958 & 26-1044, Dkt. No. 17 at 4 (9th Cir. Mar. 31, 2026). *Yajure Hurtado* binds immigration judges, meaning it would be "an exercise in futility" to seek a bond hearing. *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000). Thus, Petitioner's petition does not present an exhaustion problem.

Instead, Singh filed a petition for a writ of habeas corpus. Dkt. No. 1. The petition states two claims for relief. First, Singh alleges that his detention without bond violates the INA. *Id.* ¶¶ 30–35. Second, Singh contends that his detention without bond violates his due process rights. *Id.* ¶¶ 36–44.

As mentioned above, the petition preserves for appeal a statutory claim foreclosed by the Fifth Circuit's decision in *Buenrostro-Mendez*, which agreed with *Yajure Hurtado* and upheld the government's mandatory-detention policy under Section 1225. *See* 166 F.4th at 498. There, the Fifth Circuit turned to the plain language of Section 1225, which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). The Fifth Circuit found "no material disjunction" between the phrases "applicant for admission" and "seeking admission," and thus concluded that all applicants for admission fall within Section 1225(b)(2)(A)'s grasp. *Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Garibay-Robledo v. Noem*, 814 F. Supp. 3d 747, 754 (N.D. Tex. 2026)).

## 2. Legal Standard

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or

treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### 3.    Analysis

As noted above, Singh raises two claims in his habeas petition—one involving Sections 1225 and 1226 of the INA, and another based on the Fifth Amendment's Due Process Clause. Dkt. No. 1 ¶¶ 30–44. As explained below, *Buenrostro-Mendez* forecloses Singh's statutory claim. Thus, the only claim left for consideration is Singh's due process claim. The Court has considered whether the Due Process Clause entitles illegal aliens to individualized bond hearings in numerous prior cases.[2] Even so, the Court considers the arguments raised in Singh's briefing to address whether bond-less detention of aliens present in the United States violates the Constitution. The answer is no.

### A.    *Buenrostro-Mendez* forecloses Singh's INA claim.

Singh does not address the impact of *Buenrostro-Mendez* on this case, but seems to recognize that it might foreclose his INA claim. That is, in fact, the case. Start with the text of Section 1225. It broadly defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Singh is an "alien." He is "present in the United States." And he "has not been admitted" because he did not "lawful[ly] ent[er] [the country] after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A) (defining "admission" and

---

[2] *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo*, 814 F. Supp. 3d 747; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Zuniga v. Lyons*, 814 F. Supp. 3d 685 (N.D. Tex. 2025).

"admitted"). As an applicant for admission, *Buenrostro-Mendez* requires that he be detained without bond under Section 1225(b)(2)(A). *See* 166 F.4th at 498. Thus, his INA claim fails.[3]

### B.  The Due Process Clause does not require the government to give Singh a bond hearing.

Next is Singh's claim that the government's refusal to provide a bond hearing violates the Due Process Clause of the Fifth Amendment. Dkt. No. 1 ¶¶ 36–44. Because *Buenrostro-Mendez* did not directly address this question, the Court turns to Singh's arguments. His petition appears to sound in both the procedural and substantive veins of due process. *See id.* ¶¶ 39–41. But either way, he is not entitled to relief.

Start with substantive due process. That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). While still recognizing due-process rights for aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures. The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911–12. To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention. In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of

---

[3] Even if this Court were not bound by *Buenrostro-Mendez*, it would have reached the same result for the reasons discussed in its numerous prior decisions on this issue. *Supra*, n.2.

removal proceedings. In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process." *Id.* Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528. It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526. Against that backdrop, the notion that substantive due process requires a bond hearing is untenable.

A procedural due process claim fares no better. As an "applicant for admission," Petitioner has "only those rights regarding admission that Congress has provided by statute." *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").

Despite this, Singh's claim relies instead on the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976). Dkt. No. 1 ¶ 28. The *Mathews* test, while common, is not the only tool for resolving procedural due process challenges. The Supreme Court said as much: "[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). In fact, the "Supreme Court when confronted with constitutional challenges to immigration

detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

The application of *Mathews* to Section 1226 cases is "unwarranted on the test's own terms." *Ladak v. Noem*, 814 F. Supp. 3d 712, 725 (N.D. Tex. 2025). The Supreme Court explained that the *Mathews* balancing test was appropriate for "long-time lawful permanent resident[s]" in contrast to "detentions of aliens at the border or returning lawful permanent residents who had spent time abroad." *Id.* (citing 459 U.S. 21, 32–34 (1982)). Aliens in the former category have "gain[ed] admission to our country and [have begun] to develop the ties that go with permanent residence," meriting a level of due process more analogous to that of a citizen. *Landon*, 459 U.S. at 32. In the latter category, aliens "request[] a privilege and [have] no constitutional rights." *Id.*; *Thuraissigiam*, 591 U.S. at 138–39 ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.") (quotation omitted). Critically, aliens who are released into the United States pending removal "are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139 (internal quotation marks omitted); *see* 8 U.S.C. § 1182(d)(5)(A) (noting that paroled aliens are not admitted and are "dealt with in the same manner as that of any other applicant for admission to the United States"); 8 C.F.R. § 1.2 (same).

With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission. "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). No part of the statute

"says anything whatsoever about bond hearings." *Id.* Accordingly, Singh is not entitled to a bond hearing as a matter of procedural due process.[4]

### 4. Conclusion

In short, Singh, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A). *Buenrostro-Mendez*, 166 F.4th at 498. And the Due Process Clause does not require a bond hearing in these circumstances. Thus, the petition for a writ of habeas corpus (Dkt. No. 1) is denied.

So ordered on June 26, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

---

[4] Singh argues that he is entitled to heightened procedures because of his prior release from detention. Dkt. No. 1 ¶ 29. But because the process provided by Congress is the process due to him, and because the INA requires his detention, "he cannot turn back the clock to a time when such relief was available as a matter of practice." *Goyo Martinez*, 2026 WL 114418, at *7 (citation modified).